

FILED
APR 1 2 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DMITRIY KHAVKIN,

 Petitioner,

v.         Civil Action No. 3:16CV576

HAROLD W. CLARKE,

 Respondent.

## MEMORANDUM OPINION

Dmitriy Khavkin, a Virginia prisoner proceeding with counsel, brings this SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS under 28 U.S.C. § 2254 ("Second Amended § 2254 Petition," ECF No. 31).[1] Respondent has filed a MOTION TO DISMISS AND RULE 5 ANSWER ("Motion to Dismiss," ECF No. 32). Khavkin filed a BRIEF IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS SECOND AMENDED HABEAS PETITION ("Response," ECF No. 37). The matter is ripe for disposition. Because the record fails to establish conclusively that Khavkin is entitled to no relief, the Court will deny the Motion to Dismiss without prejudice and set the matter for an evidentiary hearing.

The thrust of Khavkin's allegations are that trial counsel had a conflict of interest and that, as a result, counsel coerced Khavkin to plead guilty. As the Court has previously explained,

---

[1] The Court notes that Khavkin spells his first name and last name two different ways in his filings. (See ECF No. 31, at 1; ECF No. 37, at 1.) This Memorandum Opinion uses the spelling in the caption of the Second Amended Petition for Writ of Habeas Corpus.

the task of assessing this claim, and the Motion to Dismiss, has been complicated because of the disjointed, incomplete, and often inconsistent manner in which the claims have been presented throughout the state and federal proceedings.

## I. PROCEDURAL HISTORY IN STATE COURT

### A.    Initial Criminal Proceedings

A grand jury in the Circuit Court for the County of Brunswick, Virginia ("Circuit Court") charged Khavkin in a five-count Indictment with one count of murder in the first degree in the commission of, or attempt to commit, robbery ("first-degree murder"), one count of make/possess unauthorized weapon capable of death/injury, two counts of attempted robbery, and one count of malicious wounding. Indictment at 1-2, Commonwealth v. Khavkin, Nos. CR13-73-00 through 04 (Va. Cir. Ct. filed Mar. 28, 2013). On May 23, 2013, Joseph D. Morrisey informed the Circuit Court that both he and James T. Maloney would be representing Khavkin, and requested that the Court "not[e] both of us as counsel of record for Mr. Khavkin in these matters." Letter at 1, Khavkin, Nos. CR13-73-00 through 04 (Va. Cir. Ct. filed May 23, 2013). Maloney filed a discovery motion as early as July and, in August, he appeared in court on behalf of Khavkin to request a jury trial and to set the trial date. See Letter at 1, Khavkin, Nos. CR13-73-00 through 04 (Va. Cir. Ct. filed July 15, 2013); Khavkin, Nos. CR13-73-00 through 04 (Va. Cir. Ct. Oct. 7, 2013). On October 21, 2013,

2

the Commonwealth gave notice of its intent to introduce at sentencing evidence of Khavkin's six previous felony convictions, including a conviction for robbery, use of a firearm in commission of a felony, and abduction in Stafford County, Virginia in 2009. Notice at 1, Khavkin, Nos. CR13-73-00 through 04 (Va. Cir. Ct. filed Oct. 21, 2013). On December 2, 2013, Morrissey filed a Motion to Continue the December 10, 2013 trial date. Motion to Continue at 1-2, Khavkin, Nos. CR13-73-00 through 04 (Va. Cir. Ct. filed Dec. 2, 2013).

On December 5, 2013, Khavkin and the Commonwealth entered into a Plea Agreement, pursuant to which it was agreed that: (1) Khavkin would plead guilty to the lesser offense of second-degree murder (instead of first-degree murder); (2) Khavkin would plead guilty to the lesser offense of assault and batter, a misdemeanor (instead of malicious wounding which is a felony); and (3) Khavkin would plead guilty to one count of attempted robbery. (ECF No. 26-3, at 23.) The Commonwealth agreed to nolle prosequi the charge of make/possess unauthorized weapon capable of death/injury and one count of attempted robbery. (Id.) In the Plea Agreement, the Commonwealth and Khavkin agreed that, in exchange for his guilty pleas, an active sentence of twenty-four years and two months for second-degree murder was appropriate, with no period of incarceration for the attempted robbery or assault and battery convictions. (Id. at 23-24.)

3

On December 6, 2013, the Circuit Court sentenced Khavkin to a total of twenty-four years and two months of incarceration based upon the terms of the Plea Agreement. (ECF No. 34-1, at 1-2.) Khavkin filed no appeal.

### B. State Habeas Proceedings

Khavkin, by counsel James S. Ellenson, filed a petition for a writ of habeas corpus in the Circuit Court. (ECF No. 34-2, at 1, 13.) It is difficult to ascertain the claims that Khavkin raised in the Circuit Court because the habeas petition did not substantially follow the required standardized form for filing habeas petitions in Virginia and failed to set forth numbered claims for relief. In the Motion to Dismiss that was filed in the Circuit Court, Respondent tried to remedy that problem and identified the claims that were filed in the Circuit Court as follows:

> a. the trial court was without jurisdiction to accept the petitioner's plea;
> b. Petitioner was incapable of entering a voluntary plea due to his incarceration for almost a year in solitary confinement prior to the entry of his plea;
> c. Petitioner was abandoned by trial counsel Joe Morrissey, and that co-counsel, James Maloney, was associated without the petitioner's knowledge or consent;
> d. trial counsel Maloney coerced petitioner into pleading guilty by telling the petitioner he had no chance to win his case;
> e. trial counsel Maloney had a conflict of interest that he never told the petitioner about.

(ECF No. 34-3, 3-4.) The Reply that Khavkin filed in the Circuit Court did not contest Respondent's statement of the claims that he was making, and instead attempted to add new factual allegations. Reply at 1-3, Khavkin v. Clarke, No. CL14-104 (Va. Cir. Ct. filed Feb. 2, 2015). The Circuit Court granted the Commonwealth's Motion to Strike the Reply because Khavkin "[did] not have a statutory right to file a reply" and because his "insertion of additional factual matters is inappropriate at this stage in the proceedings." Khavkin, No. CL14-104, at 1 (Va. Cir. Ct. Apr. 21, 2015). The same day, the Circuit Court denied Khavkin's habeas petition. (ECF No. 34-4, at 1-21.)

Khavkin appealed to the Supreme Court of Virginia where he presented the following assignments of error:

> 1.    The circuit court erred in denying Khavkin's request for a plenary or evidentiary hearing . . . where the allegations of the illegality of the petitioner's detention could not be fully determined on the basis of recorded matters because factual disputes remained that could not be resolved by merely reading conflicting affidavits. . . .
> 2.    The circuit court erred in denying Khavkin's petition for a writ of habeas corpus, where Khavkin's trial counsel, Joseph D. Morrissey and James T. Maloney, failed to disclose to Khavkin that Maloney had previously represented the alleged victim in Khavkin's trial, William C. Myers, who was the Commonwealth's primary witness against Khavkin, even as Maloney was pressuring Khavkin to plead guilty and asserting he "would guarantee that Khavkin would get life," thus rendering ineffective assistance of counsel under the Sixth Amendment . . . .

(ECF No. 34-5, at 19.) The Supreme Court of Virginia refused the petition for appeal. (Id. at 1.)

5

## II. SUBMISSIONS IN THIS COURT

### A.    Initial § 2254 Petition

Khavkin, by counsel, filed a § 2254 petition with this Court. The Respondent moved for dismissal.  In its review of the § 2254 Petition and the Motion to Dismiss, the Court determined that the manner in which Khavkin had presented his claims was in disregard of the applicable federal and local rules.  That, in turn, frustrated any meaningful analysis of the § 2254 Petition. Therefore, the Memorandum Opinion and Order entered on July 26, 2017, explained that:

> In his Brief in Opposition to the Respondent's Motion to Dismiss and Brief in Support ("Brief in Opposition," ECF No. 12), Khavkin first provides a section entitled "Facts Alleged in Petition for Writ of Habeas Corpus" and "Respondent's Statement of Facts" that once again are a narrative tied to no specific claim.  Khavkin also provides a significantly expanded legal analysis and different factual allegations with respect to Claims II and III, and for the first time, submits his own affidavit . . . providing new factual allegations not originally included in the initial § 2254 Petition. (ECF No. 12-1, at 1-2; ECF No. 12-2.)

(ECF No. 21, at 3.)   The Memorandum Opinion also noted that, "[e]ven though he significantly expanded and changed his factual allegations, Khavkin failed to sign this Brief in Opposition under penalty of perjury."  (Id. n.2.)  Finally, the Memorandum Opinion explained as follows:

Rule 2(d) of the Rules Governing Section 2254 Cases provides that an application for relief under § 2254 "must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule." Rules Governing Section 2254 Cases, R. 2(d). Moreover, in the United States District Court for the Eastern District of Virginia, all <u>pro se</u> petitions for writs of habeas corpora must be filed on a set of standardized forms. <u>See</u> E.D. Va. Loc. Civ. R. 83.4(A). "Counsel filing a petition for writ of habeas corpus need not use a standardized form, but any petition <u>shall contain</u> essentially the same information as set forth on said form." <u>Id.</u> (emphasis added). A <u>pro se</u> litigant or an attorney proceeding in this district is required to follow the rules of procedure. <u>See</u> <u>Davidson v. Johnson</u>, No. 3:08CV406, 2008 WL 4159737, at *2 (E.D. Va. Sept. 9, 2008).

The standardized form for filing a § 2254 petition, or "PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY" ("standardized form"),[2] requires that the petitioner set forth each level of appeal he pursued, and the grounds for appeal raised therein, and any post-conviction petitions he may have filed, the grounds raised therein, and the result of any proceeding. Rules Governing Section 2254 Cases, Appendix of Forms ¶¶ 8-11. The standardized form also requires the inmate to set forth "GROUND ONE" of his petition and then "state the specific facts that support your claim." <u>Id.</u> ¶ 12. The instructions specifically state, to provide "[s]upporting facts (Do not argue or cite law. Just state the specific facts that support your claim)." <u>Id.</u> The inmate must also explain why he did not exhaust his claim in state court. <u>Id.</u> Next, the inmate must identify exactly when and where in state court he raised each individual claim and the result of that filing. <u>Id.</u> An inmate must complete a separate section for each "GROUND" or claim he wishes to raise.

Next, after an inmate sets forth his claims, he must identify whether "all grounds for relief that you have raised in this petition [have] been presented to

---

[2] The standardized form for filing § 2254 petitions in this district can be found on the website for the United States District Court for the Eastern District of Virginia, at http://www.vaed.uscourts.gov/formsandfees/documents/AO241%20for%202254.pdf. This form substantially follows the standardized form set out in the Rules Governing Section 2254 Cases.

the highest state court having jurisdiction" and if they have not, the inmate must identify "which grounds have not been so presented and give your reasons(s) for not presenting them." Id. ¶ 13.

Khavkin's § 2254 Petition fails to comply with the directive of the Rules Governing Section 2254 Cases and the local rules that any habeas petition filed by counsel "shall contain essentially the same information as set forth on said form." E.D. Va. Loc. Civ. R. 83.4(A); see Rules Governing Section 2254 Cases, R. 2(d). Khavkin's § 2254 Petition provides a brief procedural history that is devoid of the specific claims that Khavkin raised during his post-conviction proceedings in state court. Khavkin then provides a narrative section entitled "FACTUAL ALLEGATIONS" that is not connected to any of the four claims for relief he later sets forth. In his "CLAIMS" section, Khavkin provides argument and cites law, and provides no "specific facts that support [his] claim[s]," as he must. Rules Governing Section 2254 Cases, Appendix of Forms ¶ 12. Khavkin then fails to identify whether he exhausted each claim or why he failed to exhaust the claim, where he raised the claim, or the result of the filing in state court. Finally, after setting forth each claim, Khavkin once again fails to identify whether he raised these claims before the highest state court having jurisdiction and if not, his reasons for not presenting these claims. Khavkin's § 2254 Petition does not follow a similar format as the standardized form, lacks required information, and quite simply does not "contain essentially the same information as set forth on said form." E.D. Va. Loc. Civ. R. 83.4(A).

"The proper use of the standardized form for filing a § 2254 petition results in administrative convenience and benefit to both the petitioner and the Court." Davidson, 2008 WL 4159737, at *2. Further, here, Khavkin apparently expects the Court and the Respondent to sift through his narrative to glean a factual basis for his claims. The Court declines to do so. Accordingly, the Court will direct Khavkin, to submit a § 2254 Petition that complies with Eastern District of Virginia Local Civil Rule 83.4(A) and "contains essentially the same information as set forth" on the standardized form for filing a § 2254 Petition in the Eastern District of Virginia. E.D. Va. Loc. Civ. R. 83.4(A).

Moreover, Khavkin significantly expanded the factual allegations in support of his claims in his Brief in Opposition to the Motion to Dismiss. The Court notes

that Khavkin must adequately set forth his grounds for relief and those factual allegations in support of his remaining claims in his § 2254 Petition.

(ECF No. 21, at 4-7.) Accordingly, the Court denied the Motion to Dismiss and directed Khavkin to submit an amended § 2254 petition that comported with applicable rules for § 2254 actions. (ECF Nos. 21, 22.)

Khavkin filed an Amended § 2254 Petition that contained many of the same deficiencies and problems as the initial § 2254 Petition. (ECF No. 23.) Therefore, by Memorandum Opinion and Order entered on July 24, 2018, the Court again denied the Motion to Dismiss and directed Khavkin to submit a second amended § 2254 petition that comported with the Court's directives. (ECF Nos. 29, 30.)

**B. The Second Amended § 2254 Petition**

Khavkin filed the Second Amended § 2254 Petition that is now before the Court. (ECF No. 31.) In the petition, Khavkin raises the following claims for relief:[3]

> Claim I: "Petitioner was <u>denied the effective assistance of counsel</u>, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, <u>because his counsel had a conflict of interest</u>, which neither defense counsel, nor the prosecutor brought to the Court's attention, and which caused his counsel to compel him to waive his right to trial and plead guilty." (<u>Id.</u> at 5) (emphasis added).

---

[3] The Court corrects the capitalization and omits the emphasis in the quotations from Khavkin's submissions.

Claim II: "Petitioner was <u>denied the effective assistance</u> of counsel <u>because his conflicted counsel coerced him into a guilty plea</u> and provided him <u>with erroneous advice</u> as to the <u>consequences</u> of a guilty plea, all in violation of the Sixth and Fourteenth Amendments to the United States Constitution." (<u>Id.</u> at 10) (emphasis added)

Claim III: "Petitioner was <u>denied the effective assistance</u> of counsel because his counsel provided <u>erroneous advice</u> as to the <u>consequences</u> of a guilty plea, in violation of the Sixth and Fourteenth Amendments to the United States Constitution." (<u>Id.</u> at 12) (emphasis added)

To begin, it appears that the second clause of Claim III is the same as the second clause of Claim II. Moreover, there is little improvement in the Second Amended § 2254 Petition, in part, because the allegations in the Second Amended § 2254 Petition remain vague. Although Khavkin has now inserted claim numbers into the narrative section of factual allegations, these seem not to be logically placed. And, once again, the asserted facts offered in support of the claims are scattered throughout the Second Amended § 2254 Petition.[4] Therefore, it is difficult to discern where one claim ends and another begins, complicating the assessment of the application of procedural bars for three distinct claims.[5] The Second Amended § 2254 Petition also contains no legal

---

[4] The Court has warned that it would not "sift through his narrative to glean a factual basis for his claims." (ECF No. 21, at 7.)

[5] As explained in conjunction with each claim in Part III below, Claim II includes the second part of Claim I, and Claim III includes the second part of Claim II. This repetition makes it difficult for the Court to discern the parameters of each claim.

argument which also complicates the ability of both the Respondent and the Court to understand and analyze the substance of Khavkin's claims.

This state of affairs leaves but two options:   (1) require a Third Amended § 2254 Petition; or (2) proceed with analysis and do the best that can be done.   The second option seems preferable at this stage of the case.

### III. EXHAUSTION OF STATE REMEDIES AND PROCEDURAL DEFAULT

#### A.    Exhaustion of State Remedies:   Legal Principles

The exhaustion requirement "is rooted in considerations of federal-state comity," and in the Congressional determination reflected in the federal habeas statutes "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92 & n.10 (1973)).   The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted).

Exhaustion has two components.   First, a petitioner must use all available state remedies before he can apply for federal habeas relief.   See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999). On that score, the statute provides hat a habeas petitioner "shall

11

not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second component requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (quoting Duncan, 513 U.S. at 365-66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994-95 (4th Cir. 1994).

## B.  Procedural Default:  Legal Principles

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default."  Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).  This doctrine provides that, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal [by the state court], the habeas petitioner has procedurally defaulted his federal habeas claim."  Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).  A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"  Id. (quoting Coleman, 501 U.S. at 735 n.1).  The burden of pleading and proving that a claim is procedurally defaulted rests with the state.  Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases).  Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim.  See Harris v. Reed, 489 U.S. 255, 262 (1989).

## C.  Claims Raised In State Court

The parties seem to agree in most part on which claims were presented to the state courts.  Both parties agree that Claims II

and III were not fairly presented to the Supreme Court of Virginia, and thus are defaulted. However, as explained in Part III.C.2 below, the parties disagree about why Claim II is defaulted.[6] Next, Respondent argues that only a portion of Claim I was raised in the petition for appeal filed in the Supreme Court of Virginia, and only that aspect of the claim would be considered fairly presented for exhaustion purposes. It appears that Khavkin disagrees with that assessment, but he does not explicitly explain why he disagrees. And, he insists that Claim I is an entirely new claim. Khavkin, however, does argue that any default should be excused by the alleged ineffective assistance of habeas counsel for failing to raise these claims in his state habeas proceedings.

### 1.  Claim I

In Claim I, Khavkin argues that:

> "Petitioner was denied the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, because his counsel had a conflict of interest, which neither defense counsel, nor the prosecutor brought to the Court's attention, and which caused his counsel to compel him to waive his right to trial and plead guilty."

---

[6] As explained more fully, supra pp. 19-22, Khavkin ultimately argues that Claim II is defaulted because it was raised by state habeas counsel in the Circuit Court but raised poorly. Thus, he contends ineffective assistance of habeas counsel is the cause for the default of Claim II. However, as Respondent correctly asserts, Claim II was raised in the Circuit Court and the default flows from the failure of appellate habeas counsel to pursue this Claim in the collateral appeal. Critically, ineffective assistance of appellate habeas counsel does not provide cause for the default of this claim.

(Sec. Am. § 2254 Pet. 5.) Although Khavkin now adds an element of coercion into the claim, he provides little support for that conclusory assertion. The apparent basis for the alleged coercion is the statement that, "[b]elieving that he would have no representation if he refused to plead guilty, and that he had no choice but to proceed with Mr. Maloney, Petitioner was compelled to plead guilty, and . . . did plead guilty." (Id. ¶ 41.)

In the state court proceedings, Khavkin's inadequacy of representation argument focused on the theory that trial counsel's previous (but undisclosed) representation of a key witness assertedly created a conflict of interest that would have precluded counsel from cross-examining the witness if the case had gone to trial. (ECF No. 34-2, at 5-9; ECF No. 34-5, at 30-37.)[7] For the first time in the Second Amended § 2254 Petition, Khavkin insinuates that this conflict caused trial counsel to compel Khavkin to plead guilty. (Sec. Am. § 2254 Pet. ¶ 41.) Khavkin contends that: "Although a conflict of interest claim was presented in Petitioner's State Habeas Corpus Petition, [Claim I here] has not been presented to the Virginia state courts, due to the ineffective assistance provided by state habeas counsel in

---

[7] Khavkin also alleged that he was unaware of this conflict and counsel's "concealment of essential information about his prior representation of the victim was a severe lapse in his professional duty." (ECF No. 34-5, at 35.)

omitting material facts and failing to allege prejudice arising from the conflict." (Id. ¶ 46.)

Respondent argues that only a portion of Claim I was raised before the Supreme Court of Virginia, where Khavkin alleged that trial counsel had a conflict of interest because of his prior representation of the key witness. (Br. Supp. Mot. Dismiss ¶¶ 12-14, ECF No. 34 (citations omitted).) Respondent also notes that, "[a]s formulated in federal habeas, however, [Claim] I, contains factual assertions and legal argument not presented to the Brunswick Circuit Court or the Supreme Court of Virginia." (Id. ¶ 12.) Respondent aptly explains:

> In the Supreme Court of Virginia, Khavkin asserted that trial counsel's prior representation of one of the complaining witnesses created a conflict of interest that would have precluded counsel from cross-examining the witness had the case proceeded to trial. He alleged that he was unaware of this conflict and counsel's failure to inform him of it was a "severe lapse in his professional duty." (Petition for Appeal, Ex. 5 at 33.)
> In federal habeas, Khavkin appears to suggest that trial counsel's conflict caused counsel to compel Khavkin to plead guilty. . . . (Second Amended Fed. Pet. 9, ¶¶ 41, 44).[] This new legal theory was not presented to the state courts at any level, and is presumably designed to address the lower court's ruling that although Khavkin had alleged an ethical failure, he had not alleged, much less proven, an actual conflict or any adverse effect on counsel's representation.[] (Ex. 4, Final Order at 18-19.) This portion of [Claim] I was therefore not exhausted by the petitioner's state habeas proceeding. Harless, 459 U.S. at 6-7; Duncan v. Henry, 513 U.S. 364, 366 (1995) ("mere similarity" of federal and states claims is not sufficient to exhaust). See also Cullen v. Pinholster, 131 S. Ct. 1388, 1400 (2011) (holding that federal review of state court's judgment for reasonableness is limited to facts presented to state court).

(Id. ¶¶ 13-14 (paragraph numbers omitted) (emphasis added).)

In the Response to the Motion to Dismiss, Khavkin states: "Petitioner concurs that the prejudice element of the claim was not presented to the Virginia courts." And, he concedes this argument was not exhausted. (Resp. 6.) Khavkin does not squarely address whether he continues in the view that this is an entirely new claim, as he had argued in previous submissions. Instead, he now says, "[t]his claim stands in precisely the same procedural posture as the ineffective assistance of counsel claim alleged in Belmar v. Clarke, C.A. No. 3:16CV455." (See id. at 6-7.)[8] Khavkin then implies that state habeas counsel is the cause for the default of Claim I. (See id.)

Khavkin clearly argued some of the conflict of interest aspects of that claim in the Circuit Court and before the Supreme Court of Virginia. However, it is undisputed that Khavkin failed to argue to the Circuit Court an essential element of a claim of

_____

[8] The Court notes that Belmar is not in "precisely the same procedural posture" as in this action. Belmar argued that he was entitled to relief because his trial counsel failed to convey a favorable plea offer to him; and, on state habeas, counsel failed to allege that Belmar would have accepted the plea offer if it had been conveyed to him. Thus, the Court concluded that counsel had failed to allege an essential component of the ineffective assistance of counsel claim on state habeas. Here, state habeas counsel alleged both that counsel suffered from a conflict of interest and that Khavkin was coerced into pleading guilty. However, as Respondent notes, it was his "failure to sufficiently causally link these allegations that resulted in his default." (Reply 1, ECF No. 38.)

conflict of interest: that counsel's conflict had an adverse effect on his representation of Khavkin. See Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001).[9] In the Second Amended § 2254 Petition, Khavkin provides sparse factual allegations making it difficult to discern whether this is truly a new claim. Nevertheless, because Khavkin now makes allegations to support the adverse effect element, namely that this conflict caused Khavkin to plead guilty, the Court is constrained to find that these new factual allegations fundamentally alter Khavkin's claim of conflict of interest. See Winston v. Kelly, 592 F.3d 535, 549 (4th Cir. 2010). If Khavkin were to attempt to return to the Virginia courts and raise this altered claim of conflict of

_____

[9] The Court acknowledges that there are two ways to assert that counsel was ineffective because of a conflict of interest. [U]nder Strickland v. Washington, 466 U.S. 668 (1984), the petitioner may show that his attorney had a potential conflict of interest and that the potential conflict prejudiced his defense; or two, the petitioner may proceed under Cuyler v. Sullivan, 446 U.S. 335 (1980), where 'he must establish a violation "by showing that an actual conflict of interest adversely affected his lawyer's performance.'" Hall v. United States, 371 F.3d 969, 973 (7th Cir. 2004) (parallel citations omitted) (some internal citations omitted). The claim of conflict is so vaguely alleged in the Second Amended § 2254 Petition that the Court cannot discern under which theory Khavkin proceeds. The state courts considered this claim under Cuyler, Respondent analyzes this claim under that line of decisions, and Khavkin responds to that argument. Moreover, proceeding under Cuyler v. Sullivan, "places a 'lighter burden' on the [petitioner] than Strickland because demonstrating an 'adverse effect' is significantly easier than showing 'prejudice.'" Hall, 371 F.3d at 973 (citation omitted). The Court presumes that Khavkin intends to proceed under Cuyler and its progeny, the easier showing to make.

interest, those courts would find the claim defaulted under Va. Code Ann. § 8.01-654(B)(2). That rule provides, in pertinent part, that:

> [A] petition [for a writ of habeas corpus] shall contain all allegations the facts of which are known to petitioner at the time of filing and such petition shall enumerate all previous applications and their disposition. No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition.

Va. Code Ann. § 8.01-654(B)(2) (West 2018). Section 8.01-654(B)(2) generally constitutes an adequate and independent procedural bar and thus would bar Khavkin's new claim. See George v. Angelone, 100 F.3d 353, 363-64 (4th Cir. 1996). Thus, Khavkin has procedurally defaulted his new claim of conflict of interest.

Nevertheless, Respondent acknowledges that Martinez v. Ryan, 566 U.S. 1 (2012), and Trevino v. Thaler, 569 U.S. 413 (2013), may potentially apply here and that those decisions could serve to supply the cause component for the default of Khavkin's claim, because even though Khavkin had counsel at his "initial-review collateral proceeding," Khavkin argues that he was ineffective in failing to raise the expanded aspects of Claim I. In the Response, Khavkin indeed argues that the fact that habeas counsel provided Khavkin with ineffective assistance of counsel, serves as cause for the procedural default of this claim. (Resp. 6-16.) As discussed below, in Part III, state habeas counsel's performance may excuse the default of Claim I.

### 2. Claim II

In Claim II, Khavkin argues:

> Petitioner was denied the effective assistance of counsel because his conflicted counsel coerced him into a guilty plea and provided him with erroneous advice as to the consequences of a guilty plea, all in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

(Sec. Am. § 2254 Pet. 10.) For the first time in the Response, Khavkin states: "Ground II was not presented to the State courts in any form. It is, therefore, unexhausted and defaulted." (Resp. 18.)[10] That is simply not accurate because state habeas counsel raised this claim before the Circuit Court, and the Circuit Court denied the claim on the merits. Khavkin even admits that "[Claim] II was known by Ellenson and raised in state habeas petition, albeit inadequately." (Id. at 19.)[11] However, it is undisputed that this Sixth Amendment claim was not raised before the Supreme Court of Virginia and is therefore, barred from review here, absent cause and prejudice, or a fundamental miscarriage of justice.

Khavkin asserts that "the default is excused, however, by the ineffectiveness of state habeas counsel." (Id. at 18.) To begin, the record shows that state habeas counsel raised this claim before

---

[10] In all other previous versions of the Response, Khavkin did not dispute Respondent's statement that Claim II was raised in Khavkin's state habeas petition in the Circuit Court.

[11] Khavkin's argument supporting this new contention that Ellenson did not raise this claim is circular and makes little to no sense. (Resp. 19-20.)

the Circuit Court and the Circuit Court denied the claim on the merits. Therefore, the alleged ineffective assistance of habeas counsel in the Circuit Court cannot serve as the cause for the default of this claim.

Instead, as pled here, the relevant assertion is that state habeas appellate counsel did not raise this claim before the Supreme Court of Virginia. However, ineffective assistance of habeas appellate counsel cannot serve as the cause for the default of this claim. Martinez holds that it applies only to the initial-review collateral proceeding for raising claims of trial counsel error. See Atkins v. Holloway, 792 F.3d 654, 661 (6th Cir. 2015) (citations omitted); Johnson v. Warden of Broad River Corr. Inst., No. 12-7270, 2013 WL 856731, at *1 (4th Cir. Mar. 8, 2013) (citing Martinez, 566 U.S. at 16). As the Supreme Court explained in Martinez, its rule did not "concern attorney errors in other kinds of proceedings including appeals from initial-review collateral proceedings . . . ." Martinez, 566 U.S. at 16. In circumstances similar to those in this case, the Fourth Circuit has explained:

> Thus, even assuming that Johnson could raise his instant ineffective assistance claim for the first time only in his state postconviction proceeding, he was represented by counsel at his postconviction hearing, and his claim was properly exhausted at that hearing. Instead, Johnson is asserting that his attorney improperly failed to preserve his ineffective assistance claim on appeal from the denial of his postconviction petition. However, Martinez assures that Johnson got his day in court at his original postconviction hearing; "deprivation of a second day [i.e. an appeal] does not

21

constitute cause." <u>Arnold v. Dormire</u>, 675 F.3d 1082, 1087 (8th Cir. 2012).

Accordingly, because Johnson alleges only ineffective assistance of <u>appellate</u> postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in <u>Martinez</u>. Instead, his claims falls under the general <u>Coleman</u> rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default.

<u>Johnson</u>, 2013 WL 856731, at *1 (alterations and emphasis in original). Because the ineffective assistance of appellate counsel cannot serve as cause for the procedural default of Claim II, this claim is barred from review here. See <u>Norris v. Brooks</u>, 794 F.3d 401, 405 (3d Cir. 2015) (citations omitted) (explaining that <u>Martinez</u> "applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals"); <u>Atkins</u>, 792 F.3d at 661; <u>Johnson</u>, 2013 WL 856731, at *1; <u>Arnold</u>, 675 F.3d at 1087.[12]

---

[12] <u>Cf.</u> <u>Davila v. Davis</u>, 137 S. Ct. 2058, 2062-63 (2017) (refusing to extend rule in <u>Martinez</u> to ineffective assistance of appellate counsel claims); <u>Reed v. Stephens</u>, 739 F.3d 753, 778 n.16 (5th Cir. 2014) (citations omitted) ("To the extent [appellant] suggests that his ineffective-assistance-of-appellate-counsel claims also should be considered under <u>Martinez</u>, we decline to do so."); <u>Dansby v. Hobbs</u>, 766 F.3d 809, 833 (8th Cir. 2014) (citations omitted) (finding that <u>Martinez</u> only applies in "limited circumstances involv[ing] a claim that <u>trial</u> <u>counsel</u> was constitutionally ineffective"), <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u> <u>Dansby v. Kelley</u>, 136 S. Ct. 297 (2015); <u>Gore v. Crews</u>, 720 F.3d 811, 816 (11th Cir. 2013) ("By its own emphatic terms, the Supreme Court's decision in <u>Martinez</u> is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel."); <u>Banks v. Workman</u>, 692 F.3d 1133, 1148 (10th Cir. 2012) ("<u>Martinez</u> applies only to 'a prisoner's procedural default of a claim of ineffective

Although Claim II, standing alone, is barred from review here, the facts supporting Claim II are part and parcel of Claim III. In Claim II, Khavkin argues that first, he was coerced by counsel into pleading guilty, and second, that counsel provided Khavkin erroneous advice about how the guilty plea would affect his suspended time for a sentence he was serving from Stafford County. Claim III again argues that counsel provided erroneous advice about how his guilty plea would affect his suspended time. The facts presented in support of Claim II can be considered in assessing Claim III even though Claim II fails for the reason set forth above.

### 3. Claim III

In Claim III, Khavkin argues:

> Petitioner was denied the effective assistance of counsel because his counsel provided erroneous advice as to the consequences of a guilty plea, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

(Sec. Am. § 2254 Pet. 12.) Both parties agree that this claim is defaulted because Khavkin failed fairly to present it to the Supreme Court of Virginia. Once again, Khavkin argues that the ineffective assistance of state habeas counsel in the Circuit Court serves as the cause for the default of this claim. As explained below, it is necessary to take evidence to decide whether the

---

assistance at trial,' not to claims of deficient performance by appellate counsel." (quoting Martinez, 566 U.S. at 9)).

ineffective assistance of counsel was not the cause for Khavkin's default of Claim III.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL AS CAUSE FOR THE DEFAULT

### A.  Applicable Law

"An attorney error does not qualify as 'cause' to excuse a procedural default unless the error amounted to constitutionally ineffective assistance of counsel." Davila v. Davis, 137 S. Ct. 2058, 2062 (2017).  In Martinez v. Ryan, 566 U.S. 1 (2012), the Supreme Court announced an "'equitable . . . qualification' of the rule in Coleman that applies where state law requires prisoners to raise claims of ineffective assistance of trial counsel 'in an initial-review collateral proceeding,' rather than on direct appeal." Davila, 137 S. Ct. at 2065 (quoting Martinez, 566 U.S. at 16, 17).  Specifically, the Court held that, in such situations, "'a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if' the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding."  Id. (quoting Martinez, 566 U.S. at 17).

After Martinez, a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective assistance of trial counsel,

> may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the "cause" for default "consist[s] of there being no

> counsel or only ineffective counsel during the state
> collateral review proceeding"; (3) "the state collateral
> review proceeding was the initial review proceeding in
> respect to the ineffective-assistance-of-trial-counsel
> claim"; and (4) state law "requires that an ineffective-
> assistance-of-trial-counsel claim be raised in an
> initial-review collateral proceeding."

Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014) (alteration in original) (quoting Trevino v. Thaler, 569 U.S. 413, 423 (2013)), cert. denied, 135 S. Ct. 1530 (2015). Here, the third and fourth elements are satisfied "because Virginia requires ineffective-assistance-of-counsel claims to be raised only in an initial-review collateral proceeding." Juniper v. Zook, 117 F. Supp. 3d 780, 789 (E.D. Va. 2015) (citing Lenz v. Commonwealth, 544 S.E.2d 299, 304 (Va. 2001)).

To satisfy the first element, a petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 566 U.S. at 14 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). To satisfy the second element of Martinez, the petitioner must demonstrate either that he lacked counsel during his state post-conviction proceedings or that post-conviction counsel "was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984)." Martinez, 566 U.S. at 14 (parallel citations omitted).

As this Court has observed, analysis of the first and second Martinez elements "blend together." Juniper, 117 F. Supp. 3d at 790.

> Specifically, the prejudice prong for habeas-level ineffectiveness requires a consideration of the merits of the underlying trial-level ineffectiveness claim, because Strickland prejudice requires consideration of "whether it is 'reasonably likely' the result would have been different" in that proceeding. Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland, 466 U.S. at 693). In reviewing a Martinez claim, a court asks whether the state-level habeas proceeding would have come to a different result if habeas counsel brought forward the trial-level ineffectiveness claim. "Thus, the facts that bear on the Strickland prejudice analysis and the Martinez substantiality analysis will largely be the same," because both questions ask a court to consider the merits of that underlying claim. Teleguz v. Davis, No. 7:10-cv-254, 2014 WL 3548982, at *24 (W.D. Va. July 17, 2014). Somewhat circuitously, therefore, the Martinez exception to the procedural-default bar includes within it consideration of the merits of the procedurally defaulted claim.

Id. (parallel citations omitted). It may often be the case that upon review of the paper record alone the Court will be able to reject the new ineffective assistance of counsel claim as failing to have "some merit." Teleguz v. Zook, 806 F.3d 803, 818 (4th Cir. 2015) (quoting Martinez, 566 U.S. at 15); Richey v. Cartledge, 653 F. App'x 178, 186 (4th Cir. 2016). However, if the record fails to conclusively show that the petitioner cannot demonstrate cause to excuse his default pursuant to Martinez, the Court may be called upon to conduct an evidentiary hearing to resolve the threshold Martinez issue. Hill v. Glebe, 654 F. App'x 294, 295 (9th Cir. 2016) (citing Detrich v. Ryan, 740 F.3d 1237, 1246–48

(9th Cir. 2013)). With these principles in mind, the Court turns to the first and second elements of _Martinez_ for Khavkin's Claims I and III.

### B. Claim I - Conflict Of Interest

In Claim I, Khavkin argues: "Petitioner was denied the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, because his counsel had a conflict of interest, which neither defense counsel, nor the prosecutor, brought to the Court's attention." (Sec. Am. § 2254 Pet. 5.) In support of his claim, Khavkin indicates that "Mr. Maloney had previously represented William Myers, the alleged victim in the malicious wounding count and one of the attempted robbery charges, on a charge of robbery in the Circuit Court of the City of Petersburg." (_Id._ ¶ 30.) According to Khavkin, he was unaware of the conflict and did not waive it, and only learned about the potential conflict from state habeas counsel. (_Id._ ¶¶ 37-38, 45.) Khavkin asserts that "Mr. Maloney is presumed to have known confidential information from his representation of Myers" and, "[o]n information and belief, Mr. Maloney actually knew confidential information." (_Id._ ¶¶ 31-32.) Khavkin concludes, "[b]elieving that he would have no representation if he refused to plead guilty, and that he had no choice but to proceed with Mr. Maloney, Petitioner was compelled to plead guilty, and did plead guilty." (_Id._ ¶ 41.)

As a threshold matter, under the first element, Khavkin's ineffective assistance claim may have "some merit." _Martinez_, 566 U.S. at 14. To establish ineffective assistance of counsel based on a conflict of interest, Khavkin "must establish that an actual conflict of interest adversely affected his lawyer's performance." _Cuyler v. Sullivan_, 446 U.S. 335, 350 (1980). If Khavkin establishes that his counsel labored under an actual conflict of interest and that counsel's conflict adversely affected counsel's performance, a presumption of prejudice arises. See _Stephens v. Branker_, 570 F.3d 198, 209 (4th Cir. 2009) (citing _Strickland v. Washington_, 466 U.S. 668, 692 (1984)).

However, the mere "possibility of [a] conflict [of interest] is insufficient to impugn a criminal conviction." _Cuyler_, 446 U.S. at 350. Thus, to demonstrate an actual conflict of interest exists, Khavkin "must show that [his] interests diverge[d] [from his attorney's] with respect to a material factual or legal issue or to a course of action." _Stephens_, 570 F.3d at 209 (alterations in original) (some internal quotation marks omitted) (quoting _Gilbert v. Moore_, 134 F.3d 642, 652 (4th Cir. 1998)), and "that the actual conflict of interest compromised his attorney's representation." _Id._ "This occurs 'when an attorney takes action for one client that is necessarily adverse to another, or when an attorney fails to take action for one client for fear of injuring another.'" _Id._ (quoting _Jones v. Polk_, 401 F.3d 257, 267 (4th

Cir. 2005)). The United States Court of Appeals for the Fourth Circuit employs a three-part inquiry for analyzing this second element:

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. [To demonstrate objective reasonableness,] the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

Id. (alteration in original) (emphasis added) (quoting Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001)).

Khavkin has presented sufficient evidence at this juncture to show that trial counsel performed deficiently by operating under a potential conflict of interest. Maloney previously had represented a key witness in the case and he failed to inform his client of this potential conflict or put it on the record before the Circuit Court. The record in its current state does not establish that the potential conflict ripened into an actual conflict or that the conflict compromised Maloney's representation of Khavkin.[13] Nonetheless, the record is sufficient to necessitate

---

[13] The Court notes that the current Second Amended § 2254 Petition lacks any allegations regarding whether any alleged potential conflict of interest adversely affected trial counsel's representation. At most, in the recitation of Claim I, Khavkin states that the conflict of interest "caused his counsel to compel him to waive his right to trial and plead guilty," and in the

a hearing on that point, because it is difficult to understand from the record why Maloney would not disclose what clearly should have been disclosed, and it is likely that Maloney received from the previous client information that could have been used to cross-examine him when he testified against Khavkin.

As to the second element of Martinez, the record reveals that Khavkin may have received the ineffective assistance of counsel during his state habeas proceedings. State habeas counsel clearly raised the claim that counsel had a conflict of interest stemming from his prior representation of the complaining witness and that counsel never notified Khavkin about the existence of this conflict. State habeas counsel provided lengthy argument and factual support for this claim, including that Khavkin's conflict of interest "render[ed] the guilty plea invalid." (ECF No. 34-2, at 9; see ECF No. 34-5, at 30-37.) State habeas counsel also raised a separate claim in the Circuit Court that counsel induced Khavkin "to plead guilty to the crime of murder, notwithstanding that counsel had a conflict of interest." (ECF No. 34-2, at 4.) Khavkin now faults counsel because he failed to plead "prejudice" in his conflict claim.

State habeas counsel pled the conflict claim under Cuyler v. Sullivan, 446 U.S. 335 (1980) and Mickens v. Taylor, 535 U.S. 162

---

recitation of Claim II, Khavkin states that "conflicted counsel coerced him into a guilty plea." (Sec. Am. § 2254 Pet. 5, 10.)

(2002), the appropriate prevailing law for a conflict of interest claim. Under that authority, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." Cuyler, 446 U.S. at 349-50. In the state habeas petition, state habeas counsel argued that an actual conflict of interest existed because counsel "could not have ever cross-examined [the witness] were the case to go to trial." (ECF No. 34-2, at 8.)[14] However, state habeas counsel failed to plead all of the elements of a conflict of interest claim: to wit: that because of this conflict, Khavkin suffered some adverse effect. Because state habeas counsel failed to plead an essential element of a conflict of interest claim, the Court concludes that Khavkin has made a sufficient preliminary showing that state habeas counsel performed deficiently by failing to plead in a proper manner Khavkin's conflict of interest claim. The record is sparse on this point but it is sufficient to necessitate an evidentiary hearing.

At this juncture, material facts remain in dispute respecting the adequacy of counsel and whether Khavkin can demonstrate prejudice from any omissions of trial counsel or habeas counsel. Juniper, 117 F. Supp. 3d at 790 (observing that "the Martinez

---

[14] Notably, federal habeas counsel does not allege this fact in the Second Amended § 2254 Petition.

exception to procedural-default bar includes within it consideration of the merits of the procedurally defaulted claim"). Under such circumstances, Khavkin should "be afforded an evidentiary hearing to develop a proper factual record," to resolve the threshold Martinez issue. Hill, 654 F. App'x at 295 (citing Detrich, 740 F.3d at 1246-48).

### C. Claim III- Ineffective Assistance Of Habeas Counsel With Respect To His Guilty Plea

Claim III is in two parts: (1) a denial of the effective assistance because counsel allegedly coerced a guilty plea (apparently because of the conflict of interest); and (2) counsel allegedly provided erroneous advice about the consequences of a guilty plea (apparently that the guilty plea would activate a suspended sentence).

Taking the last contention first, Khavkin argues that "[p]etitioner was denied the effective assistance of counsel because his counsel provided erroneous advice as to the consequences of a guilty plea, in violation of the Sixth and Fourteenth Amendments to the United States Constitution." (Sec. Am. § 2254 Pet. 12.) At the time of the incident in the Brunswick County case, Khavkin was incarcerated in Lawrenceville Correctional Center for a 2009 conviction in the Circuit Court of Stafford County for robbery, use of a firearm in the commission of

a felony, and abduction.[15] Notice at 1, <u>Commonwealth v. Khavkin</u>, Nos. CR13-73-00 through 04 (Va. Cir. Ct. filed Oct. 21, 2013). He was given a twenty-five-year sentence with a total of eighteen years suspended. <u>Id.</u> A guilty plea to the charges in Brunswick County would be the basis for revoking the suspended part of the Stafford County sentence.

In discussing Claim II (which contains the same contention), Khavkin argues that his trial counsel "erroneously advised that the aforesaid suspended sentence could not, and would not, be imposed based upon his plea and conviction for the offenses in Brunswick County that are the subject of this Petition." (Sec. Am. § 2254 Pet. ¶ 49.)[16] Khavkin contends that "[a]ny reasonably competent attorney would know that 'keeping the peace' and being of 'good behavior' are conditions of every suspended sentence"

---

[15] Khavkin appears to downplay his prior convictions and states that he "was serving time for a robbery conviction in Stafford County, Virginia, to which he pleaded 'no contest.'" (Sec. Am. § 2254 Pet. ¶ 48.)

[16] Notably, no affidavit of trial counsel exists because Khavkin refused to allow counsel to provide one. During state habeas proceedings, Respondent filed a Motion for the Provision of an Affidavit by Trial Counsel because trial counsel refused to provide an affidavit without a court order due to ethics rules. Motion for the Provision of an Affidavit by Trial Counsel at 1-4, <u>Khavkin</u>, CL14-04 (Va. Cir. Ct. filed Dec. 19, 2014). Respondent requested that Khavkin endorse an order permitting counsel to provide an affidavit to the Respondent. However, Khavkin refused to agree to the entry of such an order, and counsel was unable to provide an affidavit. <u>See</u> Letter at 1, <u>Khavkin</u>, CL14-04 (Va. Cir. Ct. filed Dec. 29, 2014); Motion for Extension at 1, <u>Khavkin</u>, CL14-04 (Va. Cir. Ct. filed Dec. 29, 2014).

(id. ¶ 50), and "[c]ompetent counsel would have realized that a court that had given [Khavkin] a suspended sentence would almost certainly impose some, or all, of that sentence for a conviction of second degree murder occurring in prison while serving the active sentence the court had imposed." (Id. ¶ 52.) On those points, Khavkin is correct. Finally, Khavkin contends that he would not have accepted the Plea Agreement and would have insisted on proceeding to trial, but for, counsel's deficient advice. (Id. ¶¶ 57-58.)

As a threshold matter, under the first element of Martinez, the Court must examine whether the consequences component of Claim III has "some merit." Martinez, 566 U.S. at 15 (citation omitted). To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Conclusory assertions in the pleadings that Khavkin would not have pled guilty if he had received better assistance from counsel are not dispositive of the issue. See United States v. Mora-Gomez, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing Hill, 474 U.S. at 59-60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. See id. at 369-70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable

barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

On this record, the "consequences" component of Claim III fails. First, during the plea colloquy, the Circuit Court specifically advised Khavkin that his conviction and sentence could affect his suspended time. Second, the plea agreement reflected the same advice. (See Dec. 5, 2013 Tr. 8.) Third, before he pled guilty, Khavkin made sworn representations to the Circuit Court that he understood that the guilty plea and conviction could affect any prior suspended time. (Dec. 5, 2013 Tr. 8.) And, as explained above, "[a]bsent clear and convincing evidence to the contrary, [Khavkin] is bound by the representations he makes under oath during a plea colloquy." Fields, 956 F.2d at 1299 (citation omitted). Khavkin's allegations that he would not have pled guilty if he had known of the possibility that his suspended time for his prior convictions could be revoked directly contradicts his sworn representations to the Circuit Court, and those recent allegations are palpably incredible. See United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (explaining that "allegations in [habeas petition] that directly contradict

36

the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false'" (quoting Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975))).  In addition, the plea hearing cured any allegedly deficient advice from counsel concerning any suspended time.  United States v. Foster, 68 F.3d 86, 88 (1995) (quoting United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992)).

Khavkin's explanation for why he should not be bound by his statements under oath is that "[p]rior to the hearing, [counsel] gave [him] the answers for the plea colloquy, which [Khavkin] parroted back in court."  (Sec. Am. § 2254 Pet. ¶ 29.)  That simply will not carry the day.  So, the "consequences" component of Claim III fails.

The coercion component of Claim III, however, is not so frail. For his part, Khavkin says that he made clear to Morrissey "that he was not guilty and wanted to go to trial," but that Maloney and Morrissey would not defend him at trial because Maloney told him that "(a) there was no chance to win the case; (b) Petitioner had to plead guilty; (c) if he went to trial, he guaranteed Petitioner would receive a life sentence; and (d) he would not try the case, regardless of Petitioner's desires."  (Id. ¶¶ 16, 23.)  Although these allegations are made in support of Claim I, they are equally pertinent to the "coercion" component of Claim III.

Khavkin also says that "Maloney overrode Petitioner's desire and intent to have a trial, and coerced him into pleading guilty, despite Petitioner's contrary wishes and goals, by telling him he had no alternative to entering into the plea agreement . . . and that Maloney was aware [that] Petitioner had substantial [defenses to the charges]." (Id. ¶ 25.)[17]  The theory is that these circumstances coerced Khavkin into a guilty plea. And, to that Khavkin contends that the advice was borne of the conflict of interest discussed in Claim I.

To decide the "coercion" component of Claim III, the Court must hear from Khavkin and from his counsel to determine whether there was a conflict of interest (which there appears to have been)

_____

[17] At no time in the Second Amended § 2254 Petition or in the Response does Khavkin deny that he is guilty of attempted robbery or killing the victim.

Khavkin states that his former counsel, Joe Morrisey, received a statement from Khavkin's co-defendant that he never saw Khavkin stab anyone, and that Morrisey was told by the D.O.C. Investigator that the stabbing may have been an accident, thus, Khavkin believed that he had a good defense at trial based on this statement. (Sec. Am. § 2254 Pet. ¶ 17.)  However, in a sworn statement provided by Morrisey in support of Respondent's Motion to Dismiss filed in the Circuit Court, Morrissey explained that no good defense existed:

> As we got closer to the trial date, Mr. Maloney and I had daily conversations regarding this case. In due course, it became abundantly clear that the co-defendant, Mr. Crews, was going to testify on behalf of the Commonwealth and incriminate our client. Additionally, numerous pieces of blood laden clothing including incriminating DNA, were going to incriminate the defendant. After a thorough discussion with our client, it was Mr. Khavkin's decision to plead guilty.

(ECF No. 34-3, at 59.)

and whether any conflict precipitated advice for Khavkin to do what he did not want to do (plead guilty).

As to the second element of Martinez, the record reveals that Khavkin may have received the ineffective assistance of counsel during his state habeas proceedings. Because the claim has "some merit," Khavkin has made a sufficient preliminary showing that state habeas counsel should have raised this claim.

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 32) will be denied without prejudice. The parties are directed to contact the Court on April 22, 2019 at 3:30 p.m. by telephone conference so that the matter can be set for an evidentiary hearing. Because it is necessary to the resolution of this matter, the Court will require testimony from the following: (1) Joseph D. Morrissey; (2) James T. Maloney; (3) James S. Ellenson; and, (4) Dmitry Khavkin. The parties may call other witnesses if they provide notice thereof not later than fourteen (14) days before the evidentiary hearing.

It is so ORDERED.

/s/ R E P
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 12, 2019